UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

St. Mary's Medical Center,  Civ. No. 11-1641 (PAM/LIB)

            Plaintiff,

v.  **MEMORANDUM AND ORDER**

International Union of Operating
Engineers, Local 70,

            Defendant.

---

This matter is before the Court on the parties' cross-Motions for Summary Judgment. Plaintiff seeks to vacate an arbitration award and Defendant seeks to confirm that award. For the reasons that follow, Plaintiff's Motion is denied and Defendant's Motion is granted.

**BACKGROUND**

**A.**    **Facts**

St. Mary's Medical Center in Duluth uses two different classifications of unionized employees in its Materials Management, central stores, and receiving areas. One classification of employees is called Clerks. Clerks are represented by United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Service Workers International Union AFL-CIO-CLC, Local 9440 ("USW Union"). The other classification is called Helpers, and Helpers are represented by Defendant International Union of Operating Engineers, Local No. 70, Service Workers ("IUOE"). There are some non-unionized employees in this department as well. Although St. Mary's has contended throughout that

the duties of Clerks and Helpers are different, the arbitrator specifically found that the duties of the two classifications were the same.[1] (Mihalek Aff. Ex. 1 (Arbitration Award) at 6.)

In January 2007, a Helper position became vacant. St. Mary's hired a Clerk to fill that Helper position. In April 2009, St. Mary's again hired a Clerk to fill a vacant Helper position. Then in June 2009, a Helper took medical leave and ultimately resigned. The arbitrator found that St. Mary's filled this vacant Helper position with a Clerk (id. at 6) thus discrediting St. Mary's argument that it hired a supervisor in the Materials Management Department in the summer of 2009, and did not fill the vacated Helper position with either a Helper or a Clerk.

**B. Arbitration**

Under the terms of the parties' CBA, the parties agreed to submit to arbitration "[a]ny controversy arising out of the interpretation of, or adherence to, the terms and provisions of this Agreement." (Docket No. 17-2 (Collective Bargaining Agreement) at 36.) The CBA further provides: "The decision of the arbitrator shall be final and binding on the Union, the Medical Center, and any employee affected in any grievance so settled. There shall be no appeal of the arbitrator's decision by any party to any court, except on grounds specified by statute." (Id. at 37.)

---

[1] When reviewing an arbitration award, a court may not disregard the arbitrator's findings of facts. See Major League Baseball Players Ass'n v. Garvey, 532 U.S. 504, 509 (2001) (noting that "the arbitrator's 'improvident, even silly, factfinding' does not provide a basis for a reviewing court to refuse to enforce the award") (quoting United Paperworkers Int'l Union, AFL-CIO v. Misco, Inc., 484 U.S. 29, 39 (1987)).

The parties arbitrated IUOE's grievances in November 2010. They stipulated that the issue was whether St. Mary's breached the contract by determining it would not fill a vacancy in the Helper position after the incumbent left, but instead created additional Clerk positions. (Mihalek Aff. Ex. 1 at 2.) The arbitrator issued her decision in March 2011, finding that the creation of new Clerk positions to perform work previously performed by Helpers was a violation of the CBA. As a remedy, the arbitrator required St. Mary's to "cease and desist from failing to post for Helper positions" and to post as Helper vacancies the next three Helper or Clerk vacancies that occurred. (Id. at 11.) St. Mary's now contends that this remedy exceeds the arbitrator's authority by requiring St. Mary's to continue to fill vacant Helper positions in perpetuity, and also that the remedy violates public policy by requiring St. Mary's to commit an unfair labor practice against the USW Union, which was not a party to the arbitration.

**DISCUSSION**

**A.    Standard of Review**

"The refusal of courts to review the merits of an arbitration award is the proper approach to arbitration under collective bargaining agreements. The federal policy of settling labor disputes by arbitration would be undermined if courts had the final say on the merits of the awards." Steelworkers v. Enter. Wheel & Car Corp., 363 U.S. 593, 596 (1960). Thus, the courts play "only a limited role when asked to review the decision of an arbitrator." United Paperworkers Int'l Union, AFL-CIO v. Misco, Inc., 484 U.S. 29, 36 (1987). An arbitrator's decision in the labor context must be affirmed as long as it "draws its essence

3

from the collective bargaining agreement." Enter. Wheel & Car Corp., 363 U.S. at 597. Indeed, "as long as the arbitrator is even arguably construing or applying the contract and acting within the scope of his authority, that a court is convinced he committed serious error does not suffice to overturn his decision." Misco, 484 U.S. at 38. .

St. Mary's challenges are to the remedy the arbitrator imposed, not the merits of the arbitrator's decision. "[W]here it is contemplated that the arbitrator will determine remedies for contract violations that he finds, courts have no authority to disagree with his honest judgment in that respect." Misco, 484 U.S. at 38.

**B.      Did the Arbitrator Exceed Her Authority?**

St. Mary's first challenge to the remedy falls within the statutory grounds for vacatur of arbitration awards. Those grounds are:

> (1) where the award was procured by corruption, fraud, or undue means;
>
> (2) where there was evident partiality or corruption in the arbitrators . . . ;
>
> (3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or
>
> (4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

9 U.S.C. § 10. The Supreme Court has held that these grounds are the exclusive grounds on which a court may vacate an arbitration award. Hall St. Assocs., LLC v. Mattel, Inc., 552 U.S. 576, 590 (2008).

"A party seeking relief [on the ground that the arbitrator exceeded her authority under § 10(a)(4)] bears a heavy burden." Oxford Health Plans LLC v. Sutter, 569 U.S. —, 2013 WL 2459522, at * 4 (June 10, 2013). "It is not enough . . . to show that the [arbitrator] committed an error—or even a serious error." Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp., 559 U.S. 662, 671 (2010). "Because the parties 'bargained for the arbitrator's construction of their agreement,' an arbitral decision 'even arguably construing or applying the contract' must stand, regardless of a court's view of its (de)merits." Oxford Health, 2103 WL 2459522, at *4 (quoting, inter alia, Eastern Assoc. Coal Corp. v. Mine Workers, 531 U.S. 57, 62 (2000)). Thus, the "sole question" for a court reviewing an arbitrator's decision "is whether the arbitrator (even arguably) interpreted the parties' contract, not whether he got its meaning right or wrong." Id.

The remedy imposed here requires St. Mary's to "cease and desist from failing to post for Helper positions." (Mihalek Aff. Ex. 1 at 11.) St. Mary's argues that its CBA with IUOE gives St. Mary's the authority, with or without the IUOE's consent or advice, to not fill vacant Helper positions and that this remedy amounts to a permanent injunction requiring St. Mary's to fill every Helper position that becomes vacant in perpetuity.

As the IUOE points out, however, the arbitrator's "cease and desist" language is merely the formal language arbitrators use to prohibit a party from continuing to violate the CBA. The arbitrator specified in the Award that the remedy must be implemented consistently with the arbitrator's opinion, which explicitly recognized St. Mary's authority to eliminate Helper positions and to unilaterally determine whether to fill vacant Helper

positions.

As discussed above, the standard of review for review of arbitration awards is among the narrowest in the law: this Court can find that the arbitrator exceeded her authority only if she was not even arguably construing the parties' contract. Here, the arbitrator carefully and thoroughly reviewed the CBA before determining that St. Mary's violated the CBA. That this Court might have decided the issues differently is not a basis on which to overturn the arbitrator's award. St. Mary's argument that the arbitrator exceeded her authority fails.

**C.     Did the Remedy Violate Public Policy?**

Next, St. Mary's contends that because the award infringes on the rights of a union that was not a party to the arbitration and will cause St. Mary's to commit an unfair labor practice as to that union, it is contrary to public policy. As discussed in a previous Order in this case, it remains an open question whether a public policy basis for overturning arbitration awards survives the Supreme Court's edict in Hall Street that courts may vacate an award only on one of the four statutory grounds for vacatur. (May 30, 2012, Order (Docket No. 28) at 8.) Public policy is not a ground recognized in the statute, and as discussed in the previous Order, several courts have determined that public policy is no longer a valid basis for overturning an arbitration award. (Id. at 9 (citing cases).)

In a recent opinion involving arbitration under the Railway Labor Act, however, the Eighth Circuit stated that it had "an absolute duty to determine whether an award violates public policy before enforcing it." Air Line Pilots Ass'n Int'l v. Trans States Airlines, LLC, 638 F.3d 572, 578 (8th Cir. 2011). The court went on to say that Hall Street's invalidation

6

of certain vacatur standards does not "determine[] the standard of review for the distinct public policy exception to the otherwise narrow grounds on which a court may set aside an arbitration award under the RLA." Id. at 579. Thus, there is some indication that the public policy inquiry survives Hall Street and remains a viable basis on which to challenge an arbitration award.

But regardless whether public policy is an appropriate basis to overturn an arbitration award, St. Mary's has not established that the award here is contrary to public policy. Cases are legion in which an award affects entities, persons, and even unions that were not party to the arbitration; no court has found this to be a reason to invalidate an arbitration award, even under pre-Hall Street standards. And it is questionable whether the award actually requires St. Mary's to commit an unfair labor practice. Its CBA with the USW Union, like the CBA with the IUOE, allows St. Mary's wide discretion in filling Clerk vacancies. (Mihalek Aff. Ex. 3 (St. Mary's/USW CBA) Art. 3.) Any argument that the USW Union may file an unfair labor practice charge as a result of the arbitration award's remedy is therefore speculation at best, and the Court may not overturn the award on the basis of such potential, speculative harm. St. Mary's has failed to establish that the award violates public policy.

**CONCLUSION**

St. Mary's is not entitled to an order vacating the arbitration award. Accordingly, **IT IS HEREBY ORDERED that**:

1. St. Mary's Motion for Summary Judgment (Docket No. 45) is **DENIED**;

    2.    IUOE's Motion for Summary Judgment (Docket No. 51) is **GRANTED**; and

    3.    The Amended Complaint (Docket No. 16) is **DISMISSED with prejudice**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**


Dated:  June 26, 2013

          *s/Paul A. Magnuson*
          Paul A. Magnuson
          United States District Court Judge